**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION**

| | |
|---|---|
| RUSSELL FRIEND,        ) | |
|      Plaintiff,        ) | |
|         ) | |
| v.        ) | CAUSE NO.: 4:17-CV-29-JVB-JPK |
|         ) | |
| TAYLOR LAW, PLLC,        ) | |
|      Defendant.        ) | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment [DE 39] and Defendant's Motion for Summary Judgment [DE 41], filed November 30, 2018. On January 11, 2019, Plaintiff also filed a motion to exclude certain evidence [DE 48]. For the reasons described below, Plaintiff's motion to exclude is denied, and the motions for summary judgment are each granted in part.

## PROCEDURAL HISTORY

On May 15, 2017, Plaintiff Russell Friend ("Friend") filed a five-count Amended Complaint against Defendant Taylor Law, PLLC ("Taylor Law"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and the Telephone Consumer Practices Act ("TCPA"), 47 U.S.C. § 227. The claims are as follows:

- Count 1 alleges that Taylor Law, a debt collector, violated 15 U.S.C. § 1692c(c) by contacting Friend after he sent Taylor Law a written demand not to contact him;

- Count 2 alleges that Taylor Law violated 15 U.S.C. § 1692f(1) by attempting to collect a debt from Friend that Friend did not owe;

- Count 3 alleges that Taylor Law violated 15 U.S.C. § 1692e by suing Friend to collect a debt that Friend did not owe;

- Count 4 alleges that Taylor Law violated 15 U.S.C. § 1692g by failing to provide the written notice required when a debt collector begins to collect a debt;
- Count 5 alleges that Taylor Law violated 47 U.S.C. § 227 by calling Friend with an automatic telephone dialing service or pre-recorded voice.

Both parties filed motions for summary judgment on November 30, 2018, and their respective responses and replies on January 11, 2019 and January 25, 2019. On January 11, 2019, Friend filed a motion to preclude or strike certain evidence in Taylor Law's motion. Taylor Law responded on January 18, 2019, and Friend replied on January 25, 2019.

## SUMMARY JUDGMENT STANDARD

Rule 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find" for the non-movant. *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations omitted). To demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). In viewing the facts presented, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Liberty Lobby*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

A court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but to determine whether there is a genuine issue of triable fact. *Liberty Lobby*, 477 U.S. at 249-50.

## MATERIAL FACTS[1]

Plaintiff Russell Friend opened a Sears-branded credit card, issued by Citibank, on April 9, 2011, and used it to buy personal items. Taylor Mot. Ex. A, Deposition of Russell Friend [DE 40-1], 16:23-25, 20:20-24; Friend Mot. Ex. I, Affidavit of Russell Friend [DE 42-10], ¶ 18-20. Citibank's records indicate that the card was closed for non-payment on June 25, 2012, with a balance of $7,381.05, and sold to CACH, LLC ("CACH"). Taylor Mot. Ex. C [DE 40-3] at 6. Although Citibank's and CACH's records indicate that Citibank sold the debt to CACH on July 18, 2012, Friend has disputed that he owes any debt to CACH. *See id.* at 6-21; Taylor Mot. Ex. B, Affidavit of Katharine Heatherly [DE 40-2], ¶ 5-8.

CACH retained Taylor Law, and Taylor Law repeatedly contacted Friend to try to collect the debt. Initially, Friend did not contest the debt, and discussed payment arrangements with Taylor Law's representatives. Taylor Mot. Ex. B (Call Recordings). However, on July 25, 2016, Taylor Law received a letter from Friend, which read in pertinent part:

> I, Russell S. Friend, dispute that I owe the above captioned debt. Pursuant to the Fair Debt Collection Practices Ace, please verify this debt. In addition, I hear by demand that you immediately cease all further communication with me other than the following:
>
> 1) Notification of receipt of this letter
>
> 2) Notification of the results of your verification
>
> 3) Notification of any legal action taken by you against me.

---

[1] The facts herein are undisputed unless otherwise indicated.

3

Friend Ex. D [DE 42-5]. Taylor Law continued to contact Friend after receiving the letter. On August 18, 2016, Taylor Law sent another letter to Friend detailing the results of its verification of the debt. Taylor Ex. F, Affidavit of Lindsey Cook [DE 40-6], ¶ 9. Lindsey Cook, a Taylor Law representative, called Friend on September 14, September 21, and October 5, 2016, and left messages on his voicemail. *Id*., ¶ 10-11. Although Taylor Law's Rule 30(b)(6) deponent testified that he did not know the purpose of those calls, Cook stated that the purpose was to notify Friend of the results of the verification. Friend Ex. C, Deposition of Richard Alphin [DE 42-4], 126:12-127:17; Cook Aff. ¶ 10-11.

When her calls were not returned, Cook "triggered a letter to be sent" on October 5, 2016. Cook Aff. ¶ 12. In discovery responses, Taylor Law characterized the letter as a "Please call letter for customer to call us about setting up a payment plan or settlement on the account." Friend Ex. N [DE 42-15] at 16. Taylor Law's Rule 30(b)(6) deponent testified that he did not know the purpose of the letter, but Cook states that the purpose was to "notify Friend that we had been unable to reach him and hopefully obtain contact as to the verification of the account." Alphin Dep. 158:19-160:9; Cook Aff. ¶ 13. The letter itself stated, in part:

> We have recently attempted unsuccessfully to reach you to discuss this matter. We remain willing to work with you to resolve this account. Please contact us at your earliest convenience to discuss what options may be available to you. [. . .] Payment may be made to Taylor Law, PLLC, P.O. Box 436709, Louisville, KY 40253-6709, with funds made payable to CACH, LLC. Thank you.

Cook Aff. Ex. A, [DE 40-6] at 13. Friend did not respond to the letter. Cook called Friend on October 25th, 2016, and November 4, 2016, and stated that the purpose was "to advise him that the account was set to be sued." Cook Aff. ¶ 15. Taylor Law sued Friend in state court on November 17, 2016, and Friend filed this action on April 14, 2017.

4

**ANALYSIS**

A.  Friend's Motion to Preclude Evidence

Friend moves to preclude certain evidence submitted by Taylor Law. Initially, Friend sought to strike several affidavits, but in briefing he clarified that he only seeks to preclude witness Lindsey Cook from providing evidence, including an affidavit attached to Taylor Law's briefing. Friend argues that Taylor Law failed to properly disclose Cook as a witness, and that her affidavit improperly contradicts the testimony of Taylor Law's Rule 30(b)(6) deponent.

Federal Rule of Civil Procedure 26 requires that at the initial disclosure stage, the defending party must identify each individual likely to have discoverable information. Fed. R. Civ. P. 26(a)(1)(A). If the disclosures are not compliant, "the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court has broad discretion in determining whether a violation is justified or harmless. *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 417 (7th Cir. 2019) (citations omitted). In this case, although Taylor Law failed to identify Cook in initial or supplemental disclosures, Friend himself identified Cook in his own initial disclosures. *See* Resp. to Mot. to Strike Ex. 4 [DE 50-4]. Friend could not have been surprised that Cook had relevant information. Rule 37 does not require that Cook's evidence be excluded.

Next, the Court addresses Friend's argument that Cook's evidence impermissibly contradicts the testimony of Taylor Law's Rule 30(b)(6) deponent, Richard Alphin. "[P]arties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Evans v. Griffin*, 932 F.3d 1043, 1048 (7th Cir. 2019) (quoting *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1167 (7th Cir. 1996)). At the Rule 30(b)(6) deposition, Alphin seemed unprepared on many of the topics identified by Friend.

For example, Alphin testified that he did not know why Taylor Law was calling Friend after it received Friend's "cease communication" letter, nor whether its October 6, 2016 letter to Friend was an attempt to collect the outstanding debt. However, Taylor Law has now submitted an affidavit by Cook, the representative who called Friend directly, that addresses these questions more favorably to Taylor Law. Strictly speaking, it is not necessarily contradictory for an employer not to know why an employee took a particular action on its behalf. It is also true that Friend, having deposed a Rule 30(b)(6) representative, should not have had to depose individual employees to search for the one able to answer these basic questions.

Because Cook's affidavit is not strictly contradictory to Alphin's testimony, the Court declines to strike Cook's affidavit or disregard it entirely. *C.f. Daubert v. NRA Grp., LLC*, 861 F.3d 382, 392 (3d Cir. 2017) (upholding district court's decision to disregard affidavit that "flatly contradicted [another employee's] earlier 30(b)(6) testimony"); *see also Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015) (holding that the sham affidavit rule should be applied "with great care [. . .] because summary judgment is not a tool for deciding questions of credibility"). However, as with any evidence, statements by Cook that are "blatantly contradicted by the record" will not create a genuine issue for trial. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

B.  Motions for Summary Judgment

Both parties move for summary judgment on all five counts of the Amended Complaint. The Court considers the counts in the order they were pled.

**1. Count 1: 15 U.S.C. § 1692c(c)**

In Count 1, Friend alleges that Taylor Law violated 15 U.S.C. § 1692c(c) by continuing to contact him after he demanded that they stop. "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease

6

further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt," subject to certain exceptions. 15 U.S.C. § 1692c(c). Taylor Law does not dispute that it is a debt collector or that Friend is a consumer, but argues that Friend's July 2016 letter did not trigger the provisions of § 1692c(c) because it "invited communication" rather than directing Taylor Law to cease all communication.

The letter demanded that Taylor Law "immediately cease all further communication" with Friend, except for notice of receipt of the letter, notice of the results of the debt verification, and notice of legal action against Friend. Contrary to Taylor Law's argument, a letter does not have to explicitly preclude all communication to trigger § 1692c(c).[2] *See, e.g.*, *Hilgenberg v. Elggren & Peterson*, No. 2:13-CV-1086, 2015 WL 4077765, at *6 (D. Utah July 6, 2015) (after consumer's statement that "all communications need to be by mail," any phone calls about the debt violated § 1692c(c)); *Hagen v. Messerli & Kramer, P.A.*, 85 F. Supp. 3d 1028, 1030-31 (D. Minn. 2015) (request to stop "non-litigation contact" triggered § 1692c(c); "[a]lthough the scope of what Hagen intended to prohibit is unclear, the court finds that no reasonable interpretation of her letter would allow M & K to continue sending her general debt collection letters"); *see also Barnes v. Seterus, Inc.*, No. 13-81021-CV, 2013 WL 6834720, at *2 (S.D. Fla. Dec. 26, 2013) (consumer's request to stop certain "harassing" communications triggered § 1692c(c); the FDCPA "does not require Plaintiff's wish to be left alone be stated in the most general terms"); *Bishop v. I.C. Sys., Inc.*, 713 F. Supp. 2d 1361, 1366-67 (M.D. Fla. 2010). A simultaneous request for the creditor to validate the debt does not remove the protections afforded by § 1692c(c). *See Montgomery v. Shermeta,*

---

[2] *Cohen v. Beachside Two-I Homeowners' Ass'n*, No. CIV. 05-706 ADM/JSM, 2006 WL 1795140 (D. Minn. June 29, 2006), cited by Taylor Law, is inapposite. In that case, the plaintiff's letter requested that the collectors "cease all collection activity" but also included a settlement offer, and the court found that the plaintiff was soliciting the debt collectors to "communicate with him regarding settlement of the debt." 2006 WL 1795140 at *13. In this case, there was no settlement offer in the letter, and no indication that Friend wanted Taylor Law to communicate with him regarding settlement or collection.

*Adams & Von Allmen, P.C.*, 885 F. Supp. 2d 849, 853 (W.D. Mich. 2012). The Court finds no genuine issue that Friend's letter was a request for Taylor Law to cease communication pursuant to § 1692c(c).

Next, the parties dispute whether Taylor Law's communications after receiving the letter involved topics prohibited by § 1692c(c). A communication does not violate § 1692c(c) if it does not concern the debt referenced in the "cease communication" letter, or if it is a "ministerial response" to an inquiry by the debtor. *See*, *e.g.*, *Grden v. Leikin Ingber & Winters P.C.*, 643 F.3d 169, 173 (6th Cir. 2011) (balance sheets sent at plaintiff's request did not violate § 1692c(c)). In this case, after Taylor Law's receipt of the letter, Taylor Law continued to call Friend, and left at least three messages on his voicemail between July 26, 2016 and October 5, 2016. Neither party presents evidence of the contents of those messages, although Cook, the Taylor Law agent, stated that the purpose of the calls was to notify Friend of the results of the verification. It seems unlikely that Taylor Law, having mailed Friend the verification results, would call Friend three times solely to repeat this message. Nonetheless, because Friend permitted Taylor Law to contact him about the results of the verification, and because there is no evidence that the calls concerned any other message, a reasonable jury could find that the calls and messages were legitimate responses to Friend's inquiries.[3]

The same is not true of Taylor Law's October 6, 2016 letter to Friend. That letter read, in part: "We remain willing to work with you to resolve this account. Please contact us at your earliest convenience to discuss what options may be available to you. [. . .] Payment may be made to Taylor Law, PLLC, P.O. Box 436709, Louisville, KY 40253-6709, with funds made payable to

---

[3] For the same reasons, summary judgment would not be appropriate as to Cook's October 25, 2016 and November 4, 2016 calls, given Friend's request for notice of "any legal action taken," Cook's statement that those calls were "to advise him that the account was set to be sued," and that Friend was in fact sued on November 17, 2016.

CACH, LLC." The letter attempts to solicit payment on the debt. In verified discovery responses, Taylor Law stated that this was a "[p]lease call letter for customer to call us about setting up a payment plan or settlement on the account." On this evidence, Cook's statement that the purpose was to "notify Friend that we had been unable to reach him and hopefully obtain contact as to the verification of the account" is "blatantly contradicted by the record" and does not create a genuine issue for trial. *Scott*, 550 U.S at 380. Accordingly, the Court finds that Taylor Law's October 6, 2020 letter violated § 1692c(c)), and on that basis grants summary judgment on Count 1 to Friend.

**2. Counts 2-4: 15 U.S.C. §§ 1692f(1), 1692e, 1692g**

In Count 2, Friend alleges a violation of 15 U.S.C. § 1692f(1), which prevents the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Friend's argument is unclear – in briefing, he discusses a broader provision, § 1692f, which prohibits "unfair or unconscionable means to collect or attempt to collect any debt." Regardless, Friend concedes that having been granted summary judgment as to Count 1, he is not entitled to recovery on Count 2. *See* Friend Reply [DE 53] at 10. In Count 3, Friend alleges a violation of 15 U.S.C. § 1692e, which bars "false, deceptive, or misleading representation or means in connection with the collection of any debt," but he does not address the claim anywhere in his briefing. In Count 4, Friend alleges a violation of 15 U.S.C. § 1692g, which requires a debt collector to provide written notice to a consumer, but again provides no argument in his briefing. The Court finds that the claims in Counts 2, 3, and 4 are abandoned. *See Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir. 2003) (arguments not addressed in briefing deemed abandoned).

9

### 3. Count 5: 47 U.S.C. § 227(b)

In Count 5, Friend alleges that Taylor Law violated the TCPA, 47 U.S.C. § 227(b), by calling him with an automatic dialing system.[4] The relevant provision prohibits calls made with "any automatic telephone dialing system" to a "cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1). An automated telephone dialing system is one that can "store or produce telephone numbers to be called, using a random or sequential number generator [and] dial such numbers." § 227(a)(1).

The parties' only evidence on the automatic dialing issue is the testimony of Richard Alphin, Taylor Law's 30(b)(6) representative. Alphin's testimony is unclear. First, he stated that Taylor Law did not know what software it used to make calls, but it was made by a company called LIVEVOX. Alphin Dep. 54:10-55:13. He stated that this software included "predictive dialers."[5] *Id.*, 55:21-24 ("If you wanted to [use] the predictive dialer, it was available to you."). Asked if Taylor Law "had the capacity" to use predictive dialers, Alphin said "That's my belief. I don't know that we ever used them or not; but, yes." *Id.*, 55:25-56:4.

Alphin testified that any calls would have been made using the LIVEVOX system, but emphasized that he didn't "know a whole lot about LIVEVOX." *Id.*, 171:14-16, 171:25:172-2. Eventually, Alphin was asked whether the calls to Friend after July 25, 2016 were made using equipment that could store or produce numbers using a random or sequential number generator. *Id.*, 172:23-173:7. Alphin responded:

> I think the answer's no. . . . And my belief is that LIVEVOX, when our agents would make phone calls, the system that they used within the LIVEVOX

---

[4] In the Amended Complaint, Friend specifically alleges that the calls were made using an "automatic telephone dialing system or an artificial or prerecorded voice" in violation of the TCPA, but in briefing he points to no evidence that the calls were made using an artificial or prerecorded voice.

[5] A predictive dialing system is a type of automatic dialing system generally found to violate the TCPA. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 801 (7th Cir. 2017).

10

        atmosphere or cloud, was a segregated system that didn't have the dialer capabilities that you're obviously asking your questions about . . . for TCPA purposes, and so those calls were routed by LIVEVOX and Square Two Financial through a separate system that didn't have the laundry list of things that you're asking that it might have. That's my understanding, but I'll tell you, I had never inspected the system; ever seen the system, and that's about all I know about the system.

*Id.*, 173:11-174:5.

    Alphin's testimony, viewed as a whole, does not resolve the issue of whether Taylor Law violated § 227. Essentially, Taylor Law's argument is based on Alphin's "belief" that its agents did not use automated dialing, despite the fact that "[i]f you wanted to [use] the predictive dialer, it was available to you." But throughout his testimony, Alphin seemed unaware of how and why the agents actually interacted with Friend – as when he testified that he did not know the purpose of Cook's calls to Friend after July 25, 2016. It is unclear whether Alphin meant that the agents were unable to use automated dialing, or whether he believes they were instructed not to. Given Alphin's testimony that it was possible for Taylor Law to use automatic dialers, a reasonable juror might not adopt his "belief" that Taylor Law did not use its automated dialing system to call Friend.

    Alphin's description of the LIVEVOX software itself was also unclear. The TCPA prohibits making "any call with . . . an automated telephone dialing system," defined as "equipment which has the capacity" to store and dial numbers in certain ways. 47 U.S.C. § 227(a)(1),(b)(1). Based on the general description provided by Alphin, it is not clear whether the operation he describes – in which agents make calls with software capable of automated dialing, but the calls are "routed . . . through a separate system" without those capabilities – violates the statute. Alphin's testimony does not establish that Taylor Law's phone system satisfied § 227. Accordingly, summary judgment is not appropriate as to Count 5.

11

## CONCLUSION

For the reasons described above, the Court **GRANTS in part** Defendant's Motion for Summary Judgment [DE 39] as to Counts 2, 3, and 4, and **DENIES** the motion as to all other Counts. The Court **GRANTS in part** Plaintiff's Motion for Summary Judgment [DE 41] as to Count 1, and **DENIES** the motion as to all other Counts. The Court **DIRECTS** the Clerk of Count to enter judgment in favor of Plaintiff on Count 1, and to enter judgment in favor of Defendant on Counts 2, 3, and 4. The Court **DENIES** Plaintiff's Motion for Sanction Precluding Evidence or Striking Affidavit [DE 48].

The Court **ORDERS** the parties to file a status report, addressing the status of this case as to Count 5, by **January 13, 2021**.

SO ORDERED on December 18, 2020.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
